UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
GARRICK GIDEON JOHN,                 :    12 Civ. 1944 (CM)(JCF)
                                     :
              Petitioner,            :         REPORT AND
                                     :      RECOMMENDATION
        - against -                  :
                                     :
STATE OF NEW YORK,                   :
                                     :
              Respondent.            :
- - - - - - - - - - - - - - - - - -:
TO THE HONORABLE COLLEEN McMAHON, U.S.D.J.:

     Garrick Gideon John,[1] proceeding pro se, brings this petition

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254,

challenging his conviction in New York State Supreme Court, New

York County, for one count each of conspiracy in the second and

fourth degrees, two counts of attempted murder in the second

degree, two counts of assault in the second degree, two counts of

criminal possession of a weapon in the second degree, and two

counts of criminal possession of a weapon in the third degree.  Mr.

John contends that: (1) his right to due process was violated

because he was not present during every stage of the trial; (2) the

admission of hearsay testimony about uncharged acts violated his

right to due process and to a fair trial; (3) the trial court

_____

     [1]  The record and various court opinions refer to the
petitioner sometimes as John Garrick and sometimes as Garrick John.
For purposes of this report, the petitioner will be referred to as
Garrick John, which is how he has identified himself in this
proceeding.

violated his right to testify in his own defense when the prosecution was allowed to impeach him with evidence of prior crimes; (4) he received ineffective assistance of trial counsel; (5) his right to a fair trial was violated when he was unable to impeach an adverse witness' hearsay statements with prior inconsistent testimony; (6) the imposition of consecutive sentences violated his right to trial by jury; (7) he received ineffective assistance of appellate counsel; and (8) his right to due process and a fair trial were violated when prosecutors knowingly used false testimony.  For the reasons set forth below, I recommend that the petition be denied.

Background

    A. The Crimes

Garrick John acted as an enforcer, supplier, and seller for a marijuana trafficking organization in the East Village in the early 1990's.  He procured marijuana from Florida that was sold out of a West Indian Restaurant run by his co-defendant and friend Ernie Isaac, known as "Big Nose."  (Tr. at 274, 279-85, 1304).[2]  Mr. John

---

[2]  "Tr." refers to the transcript of the trial, which began on March 9, 2000.  The transcript of the Molineux hearing including the decision on March 7, 2000, is cited as "M."  The transcript of the pretrial proceedings on March 7-8, 2000, which include the voir dire and a Sandoval hearing, is referred to as "V.D.," and the transcript of the sentencing proceeding is cited as "S."

and Big Nose[3] fought with a rival marijuana drug gang run by Andre Pierre Louis, known as "Terry" or "Fingers."  (Tr. at 1389-97). The charges against Mr. John arose out of a series of violent altercations with Fingers and his associates, which resulted in Fingers' death.

Specifically, Mr. John was charged with fourth-degree conspiracy to possess and sell marijuana; second-degree conspiracy to murder Fingers; second-degree murder for the killing of Fingers on February 27, 1993, as well as second- and third-degree criminal possession of a weapon in connection with that alleged murder; second-degree assault against another member of the rival gang, Martin Fritsche, known as "Goldie," who was shot and injured in the February 27 incident; attempted murder of Fingers in connection with a shooting on April 24, 1991, as well as second- and third-degree criminal possession of a weapon and second-degree assault in connection with that incident; second-degree assault for the shooting of rival gang member Pius Oculi, also known as "Pius Henry," in that same April 24 incident; attempted murder in connection with the shooting of rival gang member Peter Brian Nelson, also known as "Jolly," on April 26, 1991, as well as second- and third-degree criminal possession of a weapon in

---

[3]  Because the parties and the trial transcript refer to most of the participants by their nicknames, I follow the same practice.

connection with that incident; and attempted murder in connection with the shooting of Jolly on July 4, 1991, as well as second- and third-degree criminal possession of a weapon in connection with that incident. (M. at 5-10; Tr. at 1827-55).

A jury convicted Mr. John of the drug conspiracy, the conspiracy to murder Fingers, the attempted murder of Fingers on April 24 and its associated counts; the assault on Pius; and the attempted murder of Jolly on April 26 and its associated counts. (Tr. at 1917-21). He was found not guilty of the remaining counts -- the murder of Fingers and associated counts, including the assault on Goldie, and the attempted murder of Jolly and associated counts.

B.    Relevant Pretrial and Trial Proceedings

1.    Molineux and Sandoval Hearings[4]

The prosecution sought to introduce testimony from Duvean Lewis, Mr. John's former girlfriend (Tr. at 258-59), regarding uncharged crimes. Ms. Lewis had been involved with Mr. John in

---

[4] A Molineux hearing and a Sandoval hearing are two types of pretrial hearings in criminal cases in New York state courts. A Molineux hearing determines the admissibility of evidence of a defendant's prior uncharged crimes. People v. Molineux, 168 N.Y. 264, 61 N.E. 286 (1901). A Sandoval hearing determines whether and to what extent the prosecution will be able to impeach a testifying criminal defendant with his or her prior bad acts. People v. Sandoval, 34 N.Y.2d 371, 357 N.Y.S.2d 849 (1974).

transporting marijuana from Florida to New York and dealing marijuana on the streets of the East Village. (Tr. at 274, 279-85). She was also involved in the events leading up to the killing of Fingers on February 27, 1993 -- indeed, Ms. Lewis was indicted as an accomplice in the murder of Fingers, but she entered into an agreement in which she pled guilty to second-degree murder with the proviso that she could withdraw that plea and plead to a lesser charge if she cooperated with the prosecution. (M. at 10-11; Tr. at 261-63, 331-50). The prosecution argued that various uncharged crimes should be admitted to explain Ms. Lewis' relationship with Mr. John, her participation in the marijuana business, and the reasons she left Mr. John and cooperated with the police. (M. at 3, 10-11, 34-35, 37-41).

The trial judge ruled that evidence of certain uncharged crimes and prior bad acts was admissible. As relevant here, he allowed testimony that Mr. John had (1) solicited Ms. Lewis to testify falsely on his behalf and later threatened to kill her because she refused; (2) kidnapped a friend of Ms. Lewis'; and (3) fired shots at Ms. Lewis' car when her sister was driving. (Respondent's Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("Resp. Memo.") at 44; Tr. at 394-96, 403-06, 753-54). The court also ruled that testimony about a 1990 incident in which Mr. John allegedly attempted to kill Fingers was

admissible, not under Molineux, but because it was "directly related to the allegation[s] in th[e] indictment." (M. at 27-29, 49). After the testimony was elicited at trial, the judge informed the jurors that it was admitted as "background" so that they could "put things in context." (Tr. at 408-09).

The prosecution requested, pursuant to Sandoval, permission to impeach Mr. John, should he testify in his defense, by asking about a number of prior crimes and alleged crimes, including the 1990 shooting of Fingers and a carjacking in Florida to which he had pled guilty. (V.D. at 159-62). The prosecution specifically disavowed seeking to impeach Mr. John by asking about a carjacking in Queens for which his conviction had been overturned on appeal. (V.D. at 160-61). Over the petitioner's objection (V.D. at 163-64), the court ruled that certain of these alleged crimes were fair game for cross-examination. As relevant here, the court ruled that "he can be asked about the 1990 alleged shooting of [Fingers]" and "about whether he forcibly stole an automobile at gunpoint," but that the word "carjacking" could not be used. (V.D. at 166).

2.   <u>Trial</u>[5]

Mr. John's counsel conceded the petitioner's involvement in the charged marijuana conspiracy.    In his opening statement, defense counsel stated, "[M]y client was involved in selling marijuana back in the early 90's." (Tr. at 55).   He also told the jury that "while the evidence will show, and I'm not contesting this, that my client was involved in marijuana sales and delivering marijuana, I submit to you the evidence will be insufficient to prove that he was involved in the rest of the counts." (Tr. at 64).   Similarly, trial counsel conceded in summation that Mr. John was involved in the marijuana conspiracy but argued that he did not commit any of the violent crimes in the indictment.   (Tr. at 1656-57).

In its case-in-chief, the prosecution sought to introduce plea minutes from Mr. John's co-defendants, who were also charged in the marijuana conspiracy, to prove the conspiracy count.   (Tr. at 1292-1300).  Defense counsel objected to the introduction of the plea minutes of alleged co-conspirators Michael Stafford and Phillip Mathias, which suggested that violence had been used in furtherance of the conspiracy, arguing that the statements'

---

[5]  Rather than presenting a full report of the evidence at trial, this section includes only the facts relevant to the issues in this petition.

7

prejudicial effect outweighed their probative value. (Tr. at 1292-97, 1300-02, 1454-57). The court allowed the statements. (Tr. at 1298-99, 1302, 1458-60). Thus, the jury heard that Mr. Mathias had admitted that members of the trafficking organization "[p]ossessed firearms for the purpose of protecting the interest of the organization" and "[t]hreatened to injure or kill and did injure and kill those who were believed to threaten the interest of the organization" (Tr. at 1469-71) and that Mr. Stafford had admitted that members of the trafficking organization had: (1) obtained, transported, and delivered marijuana for sale; (2) packaged marijuana for sale; (3) sold marijuana; (4) "[p]ossessed firearms for the purpose of protecting the interest of the organization"; or (5) "[t]hreatened to injure or kill and did injure and kill those who were believed to threaten the interest of the organization" (Tr. at 1471-72).

During the trial, Pius and Goldie testified about the shooting on the night of April 24, 1991. Pius asserted, first, that it was too dark to see who had shot him. (Tr. at 1155, 1166-67, 1179-80). After he testified, however, he told the prosecutor that he had lied about that fact because he was afraid. (Tr. at 1224-25). The judge allowed the prosecution to recall him to testify. (Tr. at 1228, 1233). He then testified that it was bright enough to see who shot him on that night, and that the shooter was Mr. John.

(Tr. at 1234-35).  On cross-examination, Pius admitted that he had twice told the police that it was too dark to identify the shooter. (Tr. at 1236-37, 1239-40).  Although Pius asserted he did so because he was scared, the judge instructed the jury to disregard that statement.  (Tr. at 1239-40).

Goldie testified that, when the petitioner and another man came to the door of Fingers' store, he was about to buzz them in when Fingers said, "[N]o, no don't buzz it."  (Tr. at 1393).  The judge sustained the defense's objection, and the prosecutor warned Goldie that he could not testify to what someone else said.  (Tr. at 1393).  When the prosecutor asked, "But Terry said something?" Goldie replied, "Well, he told me not to buzz."  (Tr. at 1393). The prosecutor again warned Goldie that he could not testify to what someone else said.  (Tr. at 1393).  The judge interrupted to ask Goldie, "You plan[n]ed to buzz but you didn't?" to which Goldie replied, "Yes.  I plan[n]ed to buzz but I didn't."  (Tr. at 1394). On cross-examination, Goldie replied in the affirmative to defense counsel's question, "You see these two people, you are about to buzz them in, [Fingers] says something and you don't buzz them in, right?"[6]  (Tr. at 1423).

_____

[6] As the respondent points out (Resp. Memo. at 67), the petitioner's assertion that this exchange occurred between Goldie and the prosecutor (Petition for Writ of Habeas Corpus under 28 U.S.C. Sec. 2254 ("Pet.") at 33) is mistaken.

Later, defense counsel sought to impeach Fingers' statement, which he characterized as evidence that Fingers could see and recognize the assailants, with testimony from the investigator of the April 24 incident, Detective Lawrence Riccio, who stated that Fingers had said he could not identify the shooter in that incident. (Tr. at 1534-37). Indicating that Goldie's testimony would not admit of that interpretation, the judge denied the request, but allowed defense counsel to attempt to lay a foundation for Fingers' statement to Detective Riccio as an excited utterance. (Tr. at 1537-38). Defense counsel was unable to lay such a foundation. (Tr. at 1542-43). The defense attorney thereafter asked about statements Pius made while in the hospital after the shooting, and Detective Riccio testified that Pius said that "he was struck in the left eye. He said that he could not see the face of the men shooting, it was too dark." (Tr. at 1544).

On the third day of the trial, March 14, 2000, Mr. John was not present in the morning. During his absence, defense counsel asserted that there was an issue he wanted to discuss with the court in Mr. John's presence. (Tr. at 491-92). He proceeded to preview the issue. He stated that he might want to impeach Ms. Lewis with allegations that she stole money from a Florida liquor store. (Tr. at 492). The judge questioned the basis for the line of inquiry, and defense counsel asserted that he had an unsigned

affidavit from a store owner about the theft, which could be verified by an investigator in Florida and witness in New York. (Tr. at 492-93). When the judge expressed skepticism about that basis, defense counsel indicated that the issue might be moot, as his ultimate question was whether, assuming he was permitted to ask about the allegations and assuming Ms. Lewis denied them, he could call a witness whose testimony would challenge that denial. (Tr. at 493-94). The judge indicated that he would likely not allow that because the alleged theft was a collateral issue. (Tr. at 495). Counsel and the judge then discussed an earlier defense objection to the court's instruction on juror note-taking. (Tr. at 495-96). The judge ruled that he would re-instruct the jury about the prohibition against note-taking if the issue arose again. (Tr. at 495-96). Mr. John entered the courtroom, whereupon defense counsel made a formal application regarding the impeachment of Ms. Lewis. (Tr. at 497). The judge ruled that the defense could ask about the allegations of theft of the liquor store, "assuming . . . a good faith basis," but that if Ms. Lewis denied it, a rebuttal witness could not be called "since it's collateral to what we're doing here." (Tr. at 497-98).

Mr. John contends that he was also not present during the second day of jury deliberations when the judge charged the jury on accomplice corroboration. (Pet. at 10). As noted, the jury

ultimately found Mr. John guilty of ten of the seventeen counts in the indictment.

    D.   <u>Sentencing</u>

The court sentenced Mr. John to the following terms of imprisonment: as to the conspiracy counts, two to four years for the marijuana conspiracy and 12 and one-half to 25 years for the murder conspiracy, to be served concurrently; as to the April 24 crimes, 12 and one-half to 25 years for the attempted murder of Fingers, consecutive to seven and one-half to 15 years for weapons possession to be served concurrently with three and one-half to seven years for possession of a weapon in the third degree and three and one-half to seven years for assault on Fingers, and three and one-half to seven years for the assault on Pius to be served consecutive to the sentences for the attempted murder and assault on Fingers; as to the April 26 crimes, 12 and one-half to 25 years for the attempted murder of Jolly and seven and one-half to 15 years for weapons possession to be served consecutively to each other and to the prior sentences, along with a concurrent three and one-half to seven year term for possession of a weapon in the third degree. (S. at 21-23). The aggregate sentence imposed was 56 to 112 years. <u>People v. Garrick</u>, 11 A.D.3d 395, 395, 783 N.Y.S.2d 371, 372 (1st Dep't 2004).

E.   Appeal and Collateral Proceedings

The Appellate Division upheld the verdict, but modified the sentence so that the weapons possession sentences ran "concurrently with the sentences for the attempted murder and assault convictions arising out of the incidents on April 24 [] and April 26." Id. at 396, 783 N.Y.S.2d at 373.   The Court of Appeals denied leave to appeal. People v. Garrick, 4 N.Y.3d 744, 790 N.Y.S.2d 656 (2004); People v. Garrick, 4 N.Y.3d 798, 795 N.Y.S.2d 174 (2005).

Mr. John's first motion to vacate the judgment pursuant to N.Y. Criminal Procedure Law 440.10, on grounds of ineffective assistance of counsel, was unsuccessful (Decision on Motion to Vacate Judgment dated Dec. 9, 2005 ("Decision on 1st Mot. to Vacate"), attached as part of Exh. K to Respondent's Answer ("Ans.")), as was his motion for a writ of error coram nobis charging ineffective assistance of appellate counsel (Decision dated June 3, 2008 ("Coram Nobis Decision"), attached as Exh. T to Ans.; Slip Opinion No. 2008 NY Slip Op. 84612(U) dated Oct. 2, 2008, attached as Exh. W to Ans.).

On August 9, 2008, Mr. John assertedly received a letter from Judith Love about Ms. Lewis' testimony. (Motion to Vacate Judgment dated Jan. 13, 2009 ("2nd Mot. to Vacate"), attached as Exh. X to Ans., at 2).  Ms. Love explained that in February 2007, Ms. Lewis confessed to her that she had fabricated her testimony after being

"persuaded by several individuals" at the New York District Attorney's Office to testify against Mr. John in return for a lenient deal and because she was "upset" with him. (Letter of Judy Love dated Aug. 6, 2008, attached as Exh. A to 2nd Mot. to Vacate; Affidavit of Judith Love dated Jan. 7, 2009, attached as Exh. B to 2nd Mot. to Vacate, at 1-2). Mr. John's second motion to vacate judgment alleged that he was entitled to a new trial based on this exculpatory evidence. (2nd Mot. to Vacate at 1). The state Supreme Court denied the motion without an evidentiary hearing, finding that "the alleged recantation is not credible." (Decision on Motion to Vacate Judgment dated July 15, 2009 ("Decision on 2nd Mot. to Vacate"), attached as Exh. Z to Ans.). A motion for reargument on the ground that an evidentiary hearing should have been held was also denied, as was leave to appeal. (Decision dated Oct. 22, 2009, attached as Exh. AA to Ans.; Certificate Denying Leave dated June 8, 2010, attached as Exh. EE to Ans.; Certificate Denying Leave to Appeal dated Oct. 5, 2010, attached as Exh. HH to Ans.).

<u>Discussion</u>

Prior to passage of the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), factual findings made by a state court after an evidentiary hearing were presumed correct in a federal habeas proceeding, but federal courts were not required to defer to

state court determinations of law and of mixed questions of law and fact.  See Thompson v. Keohane, 516 U.S. 99, 107-12 (1995); Brown v. Artuz, 283 F.3d 492, 497 (2d Cir. 2002).  Under the AEDPA, however, a writ of habeas corpus may not issue "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"The 'contrary to' and 'unreasonable application' clauses [of § 2254(d)] have independent meanings."  Douglas v. Portuondo, 232 F. Supp. 2d 106, 111 (S.D.N.Y. 2002) (citing Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000)).  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Id. (alteration in original) (quoting Jones, 229 F.3d at 119).  To determine if a decision is an unreasonable application of clearly established federal law under the AEDPA, "a habeas court must determine what arguments or

theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Harrington v. Richter, __ U.S. __, __, 131 S. Ct. 770, 786 (2011). The AEDPA "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents" but "goes no farther." Id. at __, 131 S. Ct. at 786.

Because Mr. John filed this petition after the AEDPA's effective date of April 24, 1996, this case must be reviewed under the statute's strict standards.[7] See Boyette v. Lefevre, 246 F.3d 76, 88 (2d Cir. 2001).

---

[7] The respondent previously filed a motion to dismiss the petition, arguing that it was time-barred. Because the resolution of that issue turned on a disputed question of fact -- that is, when Mr. John submitted the petition to prison authorities for filing -- I offered the respondent the option of proceeding with an evidentiary hearing on the limitations question or answering the petition on the merits while reserving its statute of limitations defense to be "adjudicated in the event the petition is not denied on the merits." (Order dated Jan. 28, 2013). The respondent chose the latter option. (Memorandum Endorsement dated Feb. 11, 2013). Because I recommend denying the petition on the merits, I do not address the statute of limitations issue. For this same reason, I do not address the petitioner's equitable tolling argument or his argument based on Schlup v. Delo, 513 U.S. 298 (1995), which are presented in his reply brief. (Petitioner's Reply to Respondent's Memorandum of Law in Opposition to the Petition for Writ of Habeas Corpus ("Reply") at 1-10).

A.   <u>Right to be Present During All Material Stages of Trial</u>

The petitioner argues that his absence in two instances during the trial violated his right to be present during all material stages.   On the third day of trial, Mr. John was not in the courtroom when trial counsel discussed whether Ms. Lewis could be impeached with allegations that she had stolen money from a liquor store and whether the jury was engaging in note-taking.   (Tr. at 491-96).   Mr. John also claims he was absent during the second day of jury deliberations when the judge instructed the jury on accomplice corroboration.   (Tr. at 1872).

A defendant has the right to be present at trial where his or her presence has a reasonable relation to the "'opportunity to defend against the charge.'"   <u>Kentucky v. Stincer</u>, 482 U.S. 730, 745 (1987) (quoting <u>Snyder v. Commonwealth of Massachusetts</u>, 291 U.S. 97, 106 (1934), <u>overruled on other grounds by</u> <u>Malloy v. Hogan</u>, 378 U.S. 1 (1964)).   However, there is no such right when the defendant's presence would be "useless, or the benefit but a shadow."   <u>Snyder</u>, 291 U.S. at 106-07.   In order to establish a due process violation, a defendant must show that his presence would have "contribute[d] to the fairness of the procedure" and that the procedure itself was "critical to [the] outcome" of the criminal proceeding.   <u>Stincer</u>, 482 U.S. at 745.

A defendant can also waive his right to be present at trial.

17

See <u>Clark v. Stinson</u>, 214 F.3d 315, 323 (2d Cir. 2000).  The waiver must be knowing and voluntary, but can be "'implied from the defendant's conduct.'"  <u>Id.</u> (quoting <u>United State v. Nicholas</u>, 56 F.3d 403, 416 (2d Cir. 1995)).  A defendant's absence from court can act as a waiver, as long as the defendant had "minimal knowledge" of the procedure or part of trial he or she was absent from.  <u>Cohen v. Senkowski</u>, 290 F.3d 485, 491 (2d Cir. 2002) (internal quotation marks omitted).  A waiver can also be found when there is no objection to continuing the trial without the defendant.  <u>Clark</u>, 214 F.3d at 323.  There is no requirement that the waiver <u>must</u> come from the defendant.  <u>Id.</u> at 323-24; <u>see also</u> <u>Polizzi v. United States</u>, 926 F.2d 1311, 1322 (2d Cir. 1991) ("Although it is certainly preferable that the waiver come from the defendant directly, there is no constitutional requirement to that effect.").  Defense counsel can waive a defendant's presence at proceedings pertaining to the conduct of the trial, such as those dealing with legal arguments or evidentiary objections.  <u>See</u> <u>Clark</u>, 214 F.3d at 323-24.  Furthermore, a violation of the right to be present, unless it "fundamentally undermines the fairness or the validity of the trial," is subject to harmless error analysis.  <u>Yarborough v. Keane</u> 101 F.3d 894, 897-98. (2d Cir. 1996).

Defense counsel waived Mr. John's right to be present during the pretrial proceedings discussing jury note-taking.  (Tr. at 495-

96).  Because this was merely a "'decision[] pertaining to the conduct of the trial,'" Clark, 214 F.3d at 324 (quoting New York v. Hill, 528 U.S. 110, 115 (2000)), counsel's waiver is sufficient, see Gee v. Artus, No. 09-CV-0606T, 2011 WL 2214299, at *3-5 (W.D.N.Y. June 6, 2011) (finding that counsel could properly waive petitioner's right to be present at pretrial hearings).

However, the defense attorney did not waive Mr. John's right to be present at the discussion of the impeachment of Ms. Lewis -- indeed, he specifically stated that, as to that issue, he would "prefer to do it with [his] client present." (Tr. at 491).  Even so, there was no due process violation.  The discussion from which Mr. John was absent concerned purely legal questions -- whether there was a good faith basis for introduction of Ms. Lewis' alleged theft of money and whether, if there was, and if Ms. Lewis denied the allegations, defense counsel could call a witness to rebut the testimony.  (Tr. at 492-94).  Mr. John's presence at this legal discussion would have been superfluous.  Moreover, Mr. John was present when his counsel formally argued the question before the judge.  (Tr. at 497-98).

Mr. John asserts that he could have offered useful information about the alleged prior theft, pointing out that "defense counsel could not answer the court's questions about the investigation" of the alleged theft.  (Pet. at 11; Reply at 13).  It is true that

defense counsel stated that he did not know the answer to the court's question about why an affidavit from the owner of the liquor store was not signed (Tr. at 492-93); however, that issue was irrelevant. It merely went to the question of whether there was a good faith basis to present the allegations, and the judge ultimately assumed that there was such a basis. (Tr. at 497). Thus, defense counsel's lack of knowledge did not affect the judge's ultimate legal determination that rebuttal testimony would not be allowed because the issue of the theft was collateral. Mr. John's presence would have provided no benefit.

As to Mr. John's assertion that he was not present when the jury was instructed on accomplice liability, the Appellate Division found that he was "actually present notwithstanding an error in the original transcript." Garrick, 11 A.D.3d at 396, 783 N.Y.S.2d at 373. This finding was based on the trial judge's granting of the prosecution's motion to resettle the record by correcting the transcript to reflect that, rather than stating, "The defendant is not here," it should state, "The defendant is now here." (Resp. Memo. at 41; District Attorney's Brief to the Appellate Division ("Dist. Att'y Br."), attached as Exh. B to Ans., at 177-78 & n.89). This, in turn, was based on affidavit from the court reporter. (Dist. Att'y Br. at 177-78 & n. 89). This is not an unreasonable determination of the facts. Therefore, it cannot be overridden in

the context of this habeas petition, except by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); <u>Santana v. Brown</u>, No. 09 Civ. 5176, 2013 WL 2641460, at *6 (S.D.N.Y. June 12, 2013) ("[U]nder AEDPA, where not manifestly unreasonable, a state court's factual findings are presumed correct, and can only be overcome by clear and convincing evidence." (internal quotation marks omitted)).  Mr. John has presented no such evidence.  Rather, he submits an affidavit asserting that he is "certain" he was not present because he "would have taken notice of something [as] extraordinary" as the judge threatening to declare a mistrial, which occurred on the same day that the accomplice liability instructions were read.  (Affidavit of Garrick John dated July 8, 2004, attached as Exh. E to Pet. Reply, ¶ 3).  This self-serving affidavit does not rise to the level of clear and convincing evidence.  <u>See, e.g.</u>, <u>Baher v. Phillips</u>, No 05 Civ. 5950, 2009 WL 1457179, at *3 (S.D.N.Y. May 26, 2009) (denying habeas relief because self-serving affidavit did not present clear and convincing evidence to override state court's factual finding); <u>see also</u> <u>Appenzeller v. Miller</u>, No. 1:10CV0013, 2010 WL 6418244, at *10 n.3 (N.D. Ohio Dec. 17, 2010) (noting that petitioner's self-serving affidavit asserting that trial transcripts were faulty fell "far short of the clear and convincing evidence required of habeas petitioners to overcome the presumption of correctness accorded facts found or accepted by state courts").

21

B.   Uncharged Acts

Mr. John claims that the admission of evidence of uncharged crimes violated his right to due process.  During the trial the prosecution elicited hearsay testimony from Ms. Lewis that Mr. John had threatened her through her mother, that Mr. John had shot bullets through her car's back window, and that she heard that her boyfriend had been kidnapped by Mr. John. (Tr. at 396, 404-05, 753-54).  Mr. John contends that evidence of these uncharged crimes and the lack of a limiting instruction by the trial judge prejudiced him by allowing the jury to "speculate about [his] alleged propensity for extreme criminal violence."  (Pet. at 16).

Generally, state evidentiary rulings are a matter of state law and "not subject to habeas review."  Collins v. Artus, No. 08 Civ. 1936, 2009 WL 2633636, at *4 (S.D.N.Y. Aug. 26, 2009) (internal quotation marks omitted).  Thus, habeas relief is only available if the petitioner can show that the erroneous evidentiary ruling was "so pervasive as to have denied him a fundamentally fair trial," Severino v. Phillips, No. 05 Civ. 475, 2008 WL 4067421, at *12 (S.D.N.Y. Aug. 25, 2008) (quoting Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985)), or so "extremely unfair that its admission violates fundamental conceptions of justice" Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (internal quotation marks omitted), overruled on other grounds by Perry v. New Hampshire, ___ U.S. ___,

22

132 S. Ct. 716 (2012).  Additionally, the challenged evidence has to be "'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'"  Id. (quoting Johnson v. Ross, 955 F.2d 178, 181 (2d Cir. 1992), and Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985) (evidence must be "crucial, critical, highly significant" (internal quotation marks omitted))).  The materiality of the evidence should be reviewed in "light of the entire record." Dunnigan, 137 F.3d at 125 (internal quotation marks omitted).

The Supreme Court has expressly left open the question of "whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime." Estelle v. McGuire, 502 U.S. 62, 75 n.5 (1991).  Therefore the state court's rejection of this claim cannot be "contrary to, or [] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); see Stenson v. Heath, No. 11 Civ. 5680, 2012 WL 48180, at *15 (S.D.N.Y. Jan. 10, 2012) ("[E]ven assuming [the petitioner] was able to successfully argue that [the state court misapplied state evidentiary law] in allowing evidence of [prior] uncharged crimes, he would still not be eligible for habeas relief because there is no Supreme Court precedent that such evidence gives rise to a constitutional violation."); Johnson

23

v. Artus, No. 09 Civ. 9843, 2010 WL 3377451, at *22 (S.D.N.Y. Aug. 26, 2010) (collecting cases).

Even if there were Supreme Court precedent on point, Mr. John would not be entitled to the relief he seeks. The trial court did not abuse its discretion in allowing Ms. Lewis to testify about petitioner's uncharged crimes because the testimony illustrated her motive for testifying. See People v. Rodriquez, 143 A.D.2d 854, 855, 533 N.Y.S.2d 331, 332 (2d Dep't 1998) (holding evidence of uncharged crime may be introduced to show witness' motive to testify). Due to the long-standing relationship between Ms. Lewis and Mr. John it was proper to introduce evidence of specific actions that prompted her to testify against Mr. John. To be sure, the limiting instruction that the trial judge provided may have been insufficient. It merely informed the jury that the testimony about Mr. John's prior bad acts was for "background" and "context," rather than instructing the jurors that they could not consider the testimony as evidence that the defendant had a propensity for committing crimes or that he committed the crimes charged. See Dunnigan, 137 F.3d at 126-27 (noting that when evidence of defendant's prior criminal history is introduced, New York state law requires limiting instruction prohibiting jury from making inference that defendant "ha[s] a propensity for committing crimes or that he [is] guilty of committing the crimes charged in th[e] case"); People

24

v. Price, 135 A.D.2d 750, 751, 522 N.Y.S.2d 870, 872 (2d Dep't 1987) ("The trial court's failure to issue limiting instructions was error."). This error did not, however, deprive the petitioner of a fair trial.

In Dunnigan, the defense, in a pretrial conference, asked the court to exclude a witness' testimony that he was the accused's parole officer, arguing unfair prejudice. 137 F.3d at 121. The court chose to admit the testimony with "an appropriate limiting instruction." Id. at 121-22 (internal quotation marks omitted). At trial, the trial court failed to give the promised instruction and the defense failed to object. Id. at 127. The Second Circuit held that the error did not deny the defendant due process:

> Since it is indisputable that [the defendant's] attorney, having argued the point just prior to trial, was aware of the import of [the evidence], and since it defies credulity to suppose that, having received assurance of the court's willingness to give a limiting instruction as to that matter on the first day of trial, he had forgotten that willingness by the time [the witness] testified two days later, we can only conclude that the defense's silence was a conscious election not to request the instruction. [The defendant] cannot be considered the victim of any fundamental unfairness because of the trial court's failure to give an instruction that [the defendant] was well aware would be given if he simply reminded the court to give it.

Id.

Here, not only did the defense argue its point in the Molineux hearing and receive various assurances from the court that limiting

instructions would be given (M. at 46-48, 50, 55-56), but it received such assurances again immediately before the challenged testimony (Tr. at 402). When the testimony was presented and the limiting instructions provided, the defense did not object or request more pointed instructions.[8] As in <u>Dunnigan</u>, then, Mr. John "cannot be considered the victim of any fundamental unfairness." <u>Dunnigan</u>, 137 F.3d at 127.

Moreover, examination of the evidence admitted and its role in light of the entire record demonstrates that any insufficiency of the limiting instruction did not deny the petitioner a fundamentally fair trial.   See <u>id.</u> at 125.   In this case there was considerable other evidence of petitioner's guilt.   This included testimony that the petitioner was involved in the marijuana conspiracy (Tr. at 279-82, 300, 313, 705-13); threatened to kill Jolly and Fingers (Tr. at 312-15, 901-05); shot Pius and Fingers in the April 24 incident (Tr.

---

[8]   Mr. John contends that defense counsel requested further instructions which the judge failed or refused to give (Reply at 27-28); however, the record establishes that, after the limiting instruction, the court asked counsel to approach the bench and "[t]ell me what I forgot or what I missed." (Tr. at 409).   After a sidebar, the trial judge instructed the jury that "Mr. John was never arrested, never charged with the supposed shooting of the automobile in Florida.   For the time being, that's sufficient." (Tr. at 409).   There is no indication that defense counsel requested anything further.   And, if the court's comments constituted, as Mr. John insists, "an implicit promise to instruct further on the issue" (Reply at 28), the defense could have later brought such a promise to the court's attention.   It did not do so.

at 73, 1392-96); and shot Jolly in the April 26 incident (Tr. at 908-13, 963-64, 970, 977-78, 1268-71).  In the light of this overwhelming evidence, it cannot be said that the court's limiting instruction, assuming that it was insufficient, denied petitioner the right to a fair trial.  See Berghuis v. Thompkins, 560 U.S. 370, __, 130 S. Ct. 2250, 2265 (finding no prejudice where trial counsel failed to request limiting instruction since record contained considerable additional evidence of guilt).

    C. Right to Testify

    Mr. John claims that the trial court's ruling on the Sandoval motion allowed him to be cross-examined with allegations that he had previously tried to shoot Fingers, as well as with facts from a carjacking conviction that was overturned on appeal. (Pet. at 19-21).  This, he asserts, denied him his right to due process under the Fourteenth Amendment. (Pet. at 18-19).

    In Luce v. United States, 469 U.S. 38, 42 (1984), the Supreme Court held that in order to "raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify."  In that case, the petitioner did not testify after the district court denied his motion in limine to preclude use of a prior conviction as impeachment evidence. Id. at 40.  The Court held that without actual testimony from the petitioner to analyze, any possible harm is "wholly speculative" Id. at 41.  If a

defendant does not testify at trial there is no way for the court to judge whether the prosecutor would have actually asked impeachment questions or if there were other possible motivations for the defendant to not testify besides the prospect of impeachment. Id. at 41-42. Furthermore, it would be impossible to conduct a proper harmless error analysis, and "almost any error would result in the windfall of automatic reversal." Id. at 42.

Although Luce dealt with a direct appeal, its analysis applies as well in federal collateral review of state court rulings. See Mercado v. Phillips, No. 04 Civ. 2204, 2011 WL 1157617, at *6 (S.D.N.Y. Feb. 22, 2011) (collecting cases); Butler v. Graham, No. 07 Civ. 6586, 2008 WL 2388740, at *8 (S.D.N.Y. June 12, 2008) ("[E]ven though there is no unequivocal guidance on the application of Luce in habeas cases challenging a state-court conviction, we are of the opinion that the analysis in Luce should be deemed applicable to a habeas petitioner . . . ."); see also Grace v. Artuz, 258 F. Supp. 2d 162, 171-72 (E.D.N.Y. 2003) (applying Luce in habeas proceeding). Similarly, the Luce "rationale [] applies to cross-examination pertaining to prior criminal conduct for which no conviction was obtained." Mercado, 2011 WL 1157617, at *6. Because, as in Luce, Mr. John did not testify, any judgment about the effect of the ruling allowing the evidence would be "speculative." Therefore, Mr. John's claims do not raise an issue

28

for habeas review.[9]

D.   <u>Effectiveness of Trial Counsel</u>

The two part test for ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), which requires a showing that: (1) "counsel's performance was deficient" in that it fell below a standard of "reasonableness under prevailing

---

[9]   The respondent also argues that relief should be denied on this ground because the petitioner's contentions are based on a misreading of the record.  Specifically, the respondent asserts that (1) the trial court's ruling that the petitioner could be impeached with evidence of the alleged prior shooting of Fingers could not have prevented Mr. John from testifying because the court had already ruled during the <u>Molineux</u> hearing that testimony regarding such shooting would be admissible in the prosecution's case-in-chief; and (2) the trial court's ruling did not, in fact, allow for cross-examination regarding the overturned carjacking conviction.  (Resp. Memo. at 52).  The respondent is factually accurate on the first point.  In the <u>Molineux</u> hearing, the trial court held that the alleged 1990 attempt on Fingers' life was admissible "as a prior admission and as some evidence of an intent . . . to commit the crime that's charged as the murder of [Fingers]."  (M. at 49-50).  The prosecution then elicited such evidence in its examination of Jolly.  (Tr. at 897-901, 989).  As to the second point, the record is clear that the prosecutor disclaimed any intent to discuss the overturned carjacking conviction or the facts underlying it.  (V.D. at 160-61).  However, in ruling on the <u>Sandoval</u> motion, the trial court did not explicitly prohibit questioning about that particular prior conviction, merely stating, seemingly in the context of a discussion of the petitioner's Florida carjacking convictions, that the prosecutor could ask questions regarding whether the petitioner had stolen a car using a gun.  (V.D. at 166).  Because of the imprecision of this oral ruling, it is plausible that Mr. John believed that the judge had allowed cross-examination regarding the overturned carjacking conviction.  However, given the grounds on which I would resolve this claim, the trial judge's ruling on the issue is irrelevant.

professional norms" and (2) "the deficient performance prejudiced the defense" in that the errors "deprive[d] the defendant of a fair trial." Id. at 687.  Under Strickland, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. Specifically "a court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." Bell v. Cone, 535 U.S. 685, 702 (2002) (quoting Strickland, 466 U.S. at 689).  The "highly deferential" standards used in Strickland and the AEDPA become even more deferential when the two are used together.  Harrington, __ U.S. at __, 131 S. Ct. at 788.  When a federal court is examining counsel's actions through the lens of § 2254(d), "the question is not whether counsel's actions were reasonable" but "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.  When looking at trial counsel's performance, "[a]ctions or omissions by counsel that 'might be considered sound trial strategy' do not constitute ineffective assistance." Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005) (second set of quotation marks omitted).  The possibility that the prejudice would have produced a different result must be "substantial, not just conceivable." Harrington, __ U.S. at __, 131 S. Ct. at 792.

30

1.   <u>Concession of Guilt</u>

During the trial, defense counsel conceded Mr. John's guilt with regard to the marijuana conspiracy in both his opening and summation.  Mr. John contends that he never consented to a plea of guilty, even for a lesser offense.  He claims that his counsel's concession of his guilt failed to subject the prosecution's case to meaningful adversarial testing and denied his right to effective counsel.[10]  The Appellate Division held that counsel was not ineffective when he made the "reasonable strategic choice" to concede guilt on a lesser offense.  <u>Garrick</u>, 11 A.D.3d at 395, 783 N.Y.S.2d at 372.

Here, as the Appellate Division held, defense counsel's

---

[10] To the extent that the petitioner's argument that his defense counsel failed to subject the prosecution's case to adversarial testing (Pet. at 22, 25) is an attempt to bring this claim under the rubric of <u>United States v. Cronic</u>, 466 U.S. 648 (1984), it fails.  In <u>Cronic</u>, the Supreme Court held that prejudice is presumed where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." <u>Id.</u> at 659. However, "[i]n order to presume prejudice under <u>Cronic</u>, defense counsel's failure to test the prosecution's case requires that counsel's failure be complete." <u>Frascone v. Duncan</u>, No. 01 Civ. 5924, 2005 WL 1404791, at *2 (S.D.N.Y. June 14, 2005)(citing <u>Bell</u>, 535 U.S. at 696-97).  Here, there is no claim that defense counsel's asserted failure was complete, therefore <u>Strickland</u> supplies the appropriate standard to evaluate defense counsel's performance.  <u>See</u> <u>Bell</u>, 535 U.S. at 696-97; <u>see also</u> <u>Wynder v. Smith</u>, No. 09 Civ. 4541, 2011 WL 70556, at *14 n.6 (S.D.N.Y. Jan. 10, 2011) (asserting that <u>Cronic</u> standard does not apply where counsel concedes guilt to a lesser charge; <u>Frascone</u>, 2005 WL 1404791, at *2 (same).

concession was a reasonable strategic choice and not deficient under Strickland. There was overwhelming evidence that the charged drug conspiracy existed and that the petitioner was a member of it, including testimony from Cyprian Antoine, known as "Jim Boy," a friend of Fingers' (Tr. at 1019-20, 1029-30, 1069-70); Herbert Nelson, known as "Ital," who worked for Mr. John selling marijuana (Tr. 1576-78, 1588-89); Ms. Lewis (Tr. at 279-82, 705); and Goldie (Tr. at 1385-95), as well as corroborating evidence from law enforcement personnel (Tr. at 1254-58, 1304-18). Given this evidence, it was sound trial strategy to concede Mr. John's participation in the drug conspiracy in an effort to get the jury to accept the defense's position that Mr. John was innocent of the other charges, which included murder. See Farrington v. Senkowski, 214 F.3d 237, 244 (2d Cir. 2000) (holding concession to lesser charge "a plausible strategic option"); Nunez v. Miller, No. 00 CV 966, 2001 WL 1773731, at *5 (E.D.N.Y. July 12, 2001) (finding that defense counsel's concession to lesser charge was not "unreasonable strategy" since evidence of guilt was overwhelming).

Additionally, Mr. John cannot meet the burden of showing he did not acquiesce in the strategic judgment of his trial counsel. To do so, he must "show[] that he in fact objected, and a petitioner who does not state an objection on the record must show not only that he disagreed with counsel, but that his will was overborne by his

counsel." <u>Frascone</u>, 2005 WL 1404791, at *2 (internal quotation marks omitted); <u>see also</u> <u>Nunez</u>, 2001 WL 1773731, at *8 (finding that petitioner's reliance on his initial not guilty plea is "insufficient to prove that he did not knowingly acquiesce in the sound strategic judgment of counsel" where counsel conceded guilt on lesser charge). Petitioner's counsel conceded his guilt to the marijuana conspiracy in both the opening and closing statements, giving the petitioner ample opportunity to object. But Mr. John offers no evidence that he disagreed with this strategy, on the record or otherwise, or that his "will was overborne." Therefore, I recommend that habeas relief be denied as to this ground.

### 2. Plea Minutes of Co-Conspirators

During the trial, Mr. John's counsel objected to the admission of plea minutes of conspirators Michael Stafford and Phillip Mathias, claiming that statements contained in them that suggested violence had been used in furtherance of the conspiracy were prejudicial. (Tr. at 1292-97, 1454-56). Mr. John contends that he was deprived of effective assistance of counsel because, although trial counsel objected to the plea minutes, he did not argue that the minutes were inadmissable because there was no finding that the conspirators were unavailable to testify. Petitioner further contends that such an argument would have prevented the plea minutes from being introduced. The Appellate Division dismissed the claim

of ineffective counsel as "unavailing."  Garrick, 11 A.D.3d at 396, 783 N.Y.S.2d at 373.

It is not necessary to decide whether defense counsel's performance was deficient in this regard because the Appellate Division reasonably found that it was not prejudicial.  First, the plea minutes did not explicitly assert that Mr. John had engaged in any violent acts, but stated, in Mr. Mathias' case, that one or more members of the conspiracy possessed firearms to protect the trafficking organization and "[t]hreatened to injure and kill and did injure and kill those . . . believed to threaten" the organization.  (Tr. at 1471).  In Mr. Stafford's case, the minutes merely stated that one or more members might have engaged in those acts.  (Tr. at 1472).  Moreover, these plea minutes represented only a fraction of the ample evidence from multiple witnesses linking Mr. John to the violent crimes of which he was convicted.  (E.g., Tr. at 73, 312-15, 901-05, 908-13, 939-40, 970, 977-78, 1154-55, 1164-70, 1266-71, 1395-96).  Considering the evidence linking the petitioner to these violent acts, the Appellant Division reasonably found that the plea minutes did not affect the petitioner's right to a fair trial.[11]  See Berghuis, 560 U.S. at __, 130 S. Ct. at 2265 (finding

_____

[11]  Mr. John does not argue that the admission of the minutes violated his rights under the Sixth Amendment's Confrontation Clause.  Even if he did properly present such a claim, it would be unsuccessful: given the ample evidence to support his conviction,

no prejudice where counsel failed to request limiting instruction since there was considerable additional evidence of petitioner's guilt); see also Samuel v. LaValley, No. 12 CV 2372, 2013 WL 550688, at *10-12 (E.D.N.Y. Feb. 12, 2013) (finding no prejudice where counsel failed to object to prosecution's improper questions and comments because of overwhelming evidence of petitioner's guilt).

3.   Failure to Investigate

Mr. John argues that defense counsel failed to conduct an adequate pretrial investigation to locate defense witnesses and uncover evidence that Jolly misidentified Mr. John as the person who shot him.[12] (Reply at 37-40; Motion to Vacate Judgment ("1st Mot. to

_____

it could not be said that the admission of the plea minutes "'had substantial and injurious effect or influence in determining the jury's verdict.'" Henry v. Speckard, 22 F.3d 1209, 1215 (2d Cir. 1994) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993)); see also Munford v. Graham, No. 09 Civ. 7899, 2010 WL 644435, at *19-20 & n.30 (S.D.N.Y. Feb. 24, 2010) (noting that on habeas review, Confrontation Clause error is subject to Brecht's harmless error standard).

[12] Mr. John presents this argument obliquely, at best, merely mentioning it in his petition as one of the points made in his first § 440 motion, but not listing it as a separate ground for relief or presenting any additional argument or evidence. (Pet. at 6). His reply brief folds the failure to investigate into the contention that trial counsel was ineffective for conceding guilt on the marijuana conspiracy charge. (Pet. Reply at 37-40). Thus, it is not surprising that the respondent seems to have overlooked it. Nevertheless, because Mr. John is proceeding pro se, I will address the argument. See, e.g., Clarke v. Goord, No. 07 CV 0366, 2007 WL 2324965, at *1 (E.D.N.Y. Aug. 10, 2007) ("[I]n his reply memorandum of law, petitioner raised, for the first time, an ineffective assistance of appellate counsel claim . . . . In light of petitioner's pro se status, this court deems the petition

Vacate"), attached as part of Exh. H to Ans., at 6-15).  The state court rejected this claim, noting that Mr. John had provided no supporting evidence.  (Decision on 1st Mot. to Vacate at 2, 4-5).

> To successfully assert an ineffective assistance of counsel claim based on a failure to investigate, a petitioner must do more than make vague, conclusory, or speculative claims as to what evidence could have been produced by further investigation.  In particular, where a petitioner claims that his attorney failed to investigate potential witnesses, the petitioner must demonstrate that the witnesses would have testified at trial and explain the expected nature of the witnesses' testimony.  Courts have rejected ineffective assistance claims based on failure to investigate potential witnesses where the petitioner failed to provide affidavits from the witnesses stating what testimony they would have offered.

United States v. Peterson, 896 F. Supp. 2d 305, 316 (S.D.N.Y. 2012) (internal quotation marks and citations omitted).

Mr. John asserts that his trial counsel failed to follow up on leads regarding the following potential witnesses:

> (1)   Ernie John, who could have established that he was a different person than Ernie Isaac (a.k.a. Big Nose), which would assertedly show that Mr. John was not involved in a marijuana conspiracy with Big Nose (1st Mot. to Vacate at 5-6);

> (2)   the petitioner's Brooklyn landlord, who could have testified that, contrary to testimony of Ms. Lewis, the petitioner did not live in Big Nose's Manhattan apartment (1st Mot. to Vacate at 9-10);

> (3)   the petitioner's half-brother, half-brother's wife, and half-brother's mother-in-law, who could have shown that, contrary to Ms. Lewis's testimony, he did

---

amended to raise this claim . . . .").

not borrow a car from them on February 26, 1993, which was then used in connection with the killing of Fingers on February 27, 1993 (1st Mot. to Vacate at 10);

(4)   several women, including Tricina Brown and Deneter Gardener, who could testify that Mr. John was not in the area of Fingers' killing on the night he was killed (1st Mot. to Vacate at 11);

(5)   two other witnesses, who could testify that Mr. John did not know that Fingers had been killed until he was informed by the uncle of a man named Abdullah Straker, who had been arrested for the killing (1st Mot. to Vacate at 12); and

(6)   several individuals on the Lower East Side, who could testify that Mr. John had at times been mistaken for Big Nose (1st Mot. to Vacate at 13).

However, as the state court noted, Mr. John does not submit affidavits from any of these witnesses stating that they would have testified and what their testimony would be. Nor is there any showing, beyond the petitioner's conclusory assertions, that his trial counsel in fact failed to investigate these potential witnesses or that a decision not to investigate was not a reasonable strategic decision. Therefore, he has failed to establish that the state court's rejection of this claim was "contrary to" or "an unreasonable application of" the Strickland standard. See, e.g., Peterson, 896 F. Supp. 2d at 316 (collecting cases for proposition that failure to provide affidavits stating potentially favorable testimony dooms ineffective assistance claim based on failure to investigate); Curry v. Burge, No. 03 Civ. 0901, 2004 WL 2601681, at

*31-32 (S.D.N.Y. Nov. 17, 2004) (rejecting ineffective assistance claim where petitioner provided no affidavit as to potential testimony or showing that counsel failed to investigate).

E.   Fingers' Prior Inconsistent Statement

Mr. John asserts that Goldie's testimony that, on April 24, Fingers told him not to buzz in the two men who had approached the door to Fingers' store, accomplished the admission of an "implicit statement [from Fingers] that he could see who was approaching the door (otherwise, there would have been no reason to tell Goldie not to buzz in the men)."[13]   (Pet. at 33-34).   Mr. John therefore contends that the trial court violated his rights under the Sixth Amendment to confront adverse witnesses when it admitted this testimony but prohibited the defense from introducing Fingers' statement to Detective Riccio that it was too dark to identify the men who approached the door.   (Pet. at 32, 34).   The Appellate Division summarily rejected this claim.   Garrick, 11 A.D.3d at 396, 783 N.Y.S.2d at 373.

---

[13]   The respondent disagrees that Goldie so testified, asserting that the trial judge sustained defense counsel's objection to Goldie's more explicit testimony that Fingers told him not to buzz the door open.   (Resp. Memo. at 66-67).   While it is correct that an objection was sustained to Goldie's statement, "[D]on't buzz it," the judge did not strike or caution the jury to disregard Goldie's immediately subsequent statement, "[H]e told me not to buzz."   (Tr. at 1393-94).   To be sure, the prosecutor admonished Goldie, "You can't tell us what he told you," but the judge took no action as to that specific statement.   (Tr. at 1393-94).

There was no constitutional error here.  The Confrontation Clause requires that, if a witness is not produced for trial, that witness' out-of-court testimonial statement will be admitted only if the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine him.  Crawford v. Washington, 541 U.S. 36, 68 (2004).  "While the Supreme Court has declined to provide a 'comprehensive definition' of testimonial statements, it indicated that the definition includes 'material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially.'" Deslesline v. Conway, 755 F. Supp. 2d 487, 500 (S.D.N.Y. 2010) (quoting Crawford, 541 U.S. at 51).  Under no formulation of "testimonial statements" could Fingers' instruction that Goldie should not buzz the door be considered testimonial; therefore, its admission was not error under the Confrontation Clause.

Nor was the petitioner denied a fair trial by the trial court's limitation of the cross-examination of Detective Riccio (which, according to the petitioner's theory, would have functioned to impeach Fingers' non-testimonial statement to Goldie).  Of course, "[t]he rights to present a defense [and] to confront and cross-examine witnesses . . . are essential to the due process guaranteed by the Fourteenth Amendment." Bradley v. Burge, No 06 Civ. 40, 2007

39

WL 1225550, at *6 (S.D.N.Y. April 19, 2007) (citing Chambers v. Mississippi, 410 U.S. 284, 294 (1973)). However, "trial judges retain wide latitude . . . to impose reasonable limits on [] cross-examination." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).

The determinative question as to whether a limitation on the defendant's ability to cross-examine a witness violates the Constitution "is whether the precluded evidence, viewed objectively in light of the entire record before the jury, would have created reasonable doubt that did not otherwise exist." Nova v. Artus, No. 05 Civ. 8437, 2007 WL 1988456, at *7 (S.D.N.Y. July 6, 2007) (citing Wade v. Mantello, 333 F.3d 51, 58-59 (2d Cir. 2003), and Justice v. Hoke, 90 F.3d 43, 47 (2d Cir. 1993)). It would not have done so here. First, the asserted need for the precluded evidence rests on the notion that Fingers' order not to buzz open the door functioned for the jury as eyewitness identification evidence. That is a tenuous connection, at best. All that came in was the statement that Fingers "told [Goldie] not to buzz." (Tr. at 1393). There was no identification of who was to be prevented from entering or why. Second, although, technically, the challenged statement was admitted, the circumstances surrounding its utterance effectively alerted the jury as to the limited use of the statement. Not only did the judge sustain the defense's objection to the statement "[n]o, no don't buzz it," but also, both before and after the

40

relevant testimony, the prosecutor warned Goldie that he could not testify to what someone else said. Moreover, the judge jumped in to emphasize the prosecutor's point, asking, "You plan[n]ed to buzz but you didn't?" to which Goldie replied, "Yes. I plan[n]ed to buzz but I didn't." (Tr. at 1394). Also, the defense was able to elicit from both Pius and Detective Riccio that Pius, who witnessed the April 24 incident with Fingers from insider Fingers' store, had told the police that it was too dark to see the assailants -- precisely the point that Fingers made to the police. Thus, defense counsel was able to impart to the jury the information he had been seeking: that it was plausible that someone inside could not see who was approaching. Finally, given the eyewitness testimony from Pius and from Goldie that the petitioner was the shooter in the April 24 incident (Tr. at 1234-35, 1394-97), the admission of Fingers' prior statement that he could not see the shooter would not have created reasonable doubt.

F. <u>Consecutive Sentences</u>

Mr. John's original sentence included six consecutive sentences from convictions for conspiracy to murder, conspiracy to sell marijuana, attempted murder, assault in the second degree, and criminal possession of a weapon. The Appellate Division held that the weapons possession charges and attempted murder charges should run concurrently. Mr. John now contends that the consecutive

sentences for conspiracy to murder and attempted murder violate his Sixth Amendment right to trial by jury because the jury did not find separate and distinct acts to support each of those. (Pet. at 36). This claim is not exhausted.

A habeas petitioner must exhaust all available state remedies for each claim prior to federal review. 28 U.S.C. § 2254(b)(1)(A); Duckworth v. Seranno, 454 U.S. 1, 3 (1981). For a claim to be exhausted, a petitioner must utilize "all available mechanisms to secure appellate review of the denial of that claim." Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981). If appellate review is not sought, or if the federal claim is not raised before the appellate court, then the claim is unexhausted.

Once appellate review is sought, a federal claim must be "fairly presented to the state courts." Picard v. Connor, 404 U.S. 270, 275-76 (1971); accord Daye v. Attorney General of State of New York, 696 F.2d 186, 191-92 (2d Cir. 1982). "In order to have fairly presented his federal claim to the state courts the petitioner must have informed the state court of both the factual and legal premises of the claim he asserts in federal court." Daye, 696 F.2d at 191. A petitioner need not cite "book and verse on the federal constitution" to alert a state court to the nature of a legal claim; it is sufficient that the legal claims are substantially equivalent. Picard, 404 U.S. at 278 (internal quotation marks omitted).

However, a state court should not have to guess that a constitutional claim is involved. Petrucelli v. Coombe, 735 F.2d 684, 689 (2d Cir. 1984). A petitioner may fairly apprise the state court that he is raising a federal constitutional claim and of the factual and legal premises underlying the claim by:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on the state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Daye, 696 F.2d at 194.

An unexhausted claim that could have been raised in the state court but was not may be deemed exhausted if the petitioner is procedurally barred from returning to the state court to litigate the claim. Gray v. Netherland, 518 U.S. 152, 161-62 (1996). The merits of a procedurally defaulted claim may not be reviewed by a federal court unless the petitioner shows cause for the default and actual prejudice resulting from it, or that failure to consider the defaulted claim would result in a "fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 749-50 (1991).

Mr. John's claimed constitutional violation is unexhausted because it was not raised to the state court in constitutional terms. On direct appeal, the petitioner relied on New York Penal

Law § 70.25(2), which mandates that sentences imposed on a person for two or more offense committed through a single act must run concurrently. (Brief for Defendant-Appellant ("Pet. App. Br."), attached as Exh. A to Ans., at 86). While a petitioner does not need to cite "book and verse on the federal constitution" to exhaust his claim, Mr. John made no reference to the Sixth Amendment or the right to a fair trial in connection with this claim in his direct appeal. (Pet. App. Br. at 91-96). The first time petitioner raised a constitutional claim with regard to the consecutive sentences was in this petition. Because he never properly raised the federal claim in state court, it is unexhausted.

This claim is now procedurally defaulted because Mr. John has no further opportunity to raise this claim to the state court.

> New York permits only one application for direct review, and having failed to raise the claim on direct appeal [the petitioner] may not seek collateral relief in New York courts. Because [the petitioner] failed to raise his claim in the ordinary appellate process and can now no longer do so, it is procedurally defaulted.

Spence v. Superintendent, Great Meadow Correctional Facility, 219 F.3d 162, 170 (2d Cir. 2000) (internal citations omitted).

As noted above, the merits of a procedurally-defaulted claim may not be reviewed by a federal court unless the petitioner either shows cause for the default and actual prejudice resulting from it, or shows that failure to consider the defaulted claim would result

in a "fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 749-50.  To show cause and prejudice the petitioner must identify the "cause for the default and prejudice from a violation of federal law."  <u>Martinez v. Ryan</u>, __ U.S. __, __, 132 S. Ct. 1309, 1316 (2012).  The petitioner has not identified any reason that would have prevented him from raising a constitutional issue to the Appellate Division or to the Court of Appeals.  Nor does he contend that failure to review his claim would be a fundamental miscarriage of justice.  <u>See</u> <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986) (fundamental miscarriage of justice requires showing of actual innocence).  Accordingly, this Court cannot reach the merits of the claim.

G.   <u>Assistance of Appellate Counsel</u>

Mr. John argues that his appellate counsel was ineffective for failing to contend (1) that the trial evidence was legally insufficient and (2) that trial counsel was ineffective for not arguing that the trial evidence was legally insufficient.[14] (Pet. at 37-44).  He raised these claims in his <u>coram</u> <u>nobis</u> petition, which was summarily denied.  (Petition for Writ of Coram Nobis, attached as Exh. R to Ans.; <u>Coram</u> <u>Nobis</u> Decision).

---

[14] Mr. John presses this argument with regard to his conspiracy to murder conviction (Pet. at 37-39), and the convictions for the events on April 24 (Pet. at 39-41) and April 26 (Pet. at 41-42).

45

Strickland's two-pronged analysis applies equally to the performance of appellate counsel. Frederick v. Warden, Lewisburg Correctional Facility, 308 F.3d 192, 197 (2d Cir. 2002); Clark, 214 F.3d at 321-22. The Supreme Court has held that appellate counsel "need not advance every argument, regardless of merit, urged by the appellant." Evitts v. Lucey, 469 U.S. 387, 394 (1985); see also Jones v. Barnes, 463 U.S. 745, 754 (1983). However, appellate counsel's performance is constitutionally inadequate if "counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). Prejudice, with regard to appellate counsel, can be shown if "there was a reasonable probability that [petitioner's] claim would have been successful before the [state's highest court]." Id. at 534 (second alteration in original) (internal quotation marks omitted).

The claim that appellate counsel was ineffective for failing to argue that the verdict was based on legally insufficient evidence does not succeed. On appeal, counsel argued that the verdict was against the weight of the evidence. (Pet. App. Br. at 25-35 & n.10). In order to decide that question, the appellate court had to determine if "all the elements and necessary findings [we]re supported by some credible evidence" -- that is, determine whether the trial evidence "satisf[ied] the proof and burden requirements

for every element of the crime charged." People v. Bleakley, 69 N.Y.2d 490, 495, 515 N.Y.S.2d 761, 763 (1987); see also People v. Danielson, 9 N.Y.3d 342, 349, 849 N.Y.S.2d 480, 484 (2007) ("Necessarily, in conducting its weight of the evidence review, as court must consider the elements of the crime, for . . . the prosecution's witnesses . . . must prove the elements of the crime beyond a reasonable doubt."). Thus, appellate counsel's "weight" argument required the Appellate Division to determine the "sufficiency" question: in order to uphold the guilty verdict, the court had to have first found that the verdict was supported by legally sufficient evidence. This will be true whenever a state criminal defendant's weight of the evidence argument fails on direct appeal. See Parker v. Ercole, 666 F.3d 830, 834–35 (2d Cir. 2012) (per curiam) (stating that question of whether verdict is against weight of evidence "subsume[s]" sufficiency claim). Therefore, the coram nobis court's decision that appellate counsel was not ineffective for failing to argue the sufficiency claim separately was not unreasonable.

The claim that appellate counsel was ineffective for failing to argue that trial counsel was ineffective because he did not present a sufficiency argument founders because Mr. John cannot show that there was a reasonable probability that the claim would have been successful before the state's highest court. See id. at 834

47

("[W]here it is easier to dispose of an ineffective assistance of counsel claim on the ground of lack of sufficient prejudice . . . that course should be followed." (internal quotation marks omitted)).   He cannot do so because, as discussed above, the Appellate Division necessarily considered and rejected a sufficiency challenge in rejecting the weight of the evidence claim and the Court of Appeals denied review.[15]   Thus, Mr. John cannot show that there was a reasonable probability that this claim would have been successful in the Court of Appeals.   See Williams v. Artus, 691 F. Supp. 2d 515, 531 (S.D.N.Y. 2010) (holding that petitioner could not show that arguments omitted from counsel's appellate brief but included in supplemental pro se brief had reasonable probability of succeeding before state's highest court when they had been rejected by Appellate Division and Court of Appeals denied review); Maxwell v. Conway, No. 06 Civ. 14203, 2009 WL 7039912, at *10 (S.D.N.Y. May 19, 2009) (holding petitioner failed to show prejudice where

---

[15] Although in noncapital criminal cases the Court of Appeals is prohibited from reviewing the Appellate Division's resolution of questions of fact, like a weight of the evidence determination, see N.Y. Const. art. VI, § 3(a); Danielson, 9 N.Y.3d at 349, 849 N.Y.S.2d at 484, the court can review legal questions such as the sufficiency of the evidence, see, e.g., People v. Brown, 17 N.Y.3d 863, 865, 932 N.Y.S.2d 775, 777 (2011).   Moreover, if the Court of Appeals determines that the intermediate appellate court did not "assess[] the evidence in light of the elements of the crime," it will reverse and remit the case to the Appellate Division "to make such an assessment."   People v. Johnson, 10 N.Y.3d 875, 878, 860 N.Y.S.2d 762, 764 (2008) (discussing Danielson).

arguments omitted by appellate counsel were ultimately rejected by Appellate Division and Court of Appeals denied review).  Appellate counsel's failure to raise the ineffective assistance of trial counsel claim cannot have prejudiced him, and the <u>coram</u> <u>nobis</u> court's denial of the claim is therefore not an unreasonable application of federal law.[16]

H.   <u>Knowingly False Testimony</u>

Mr. John argues that his constitutional right to a fair trial and due process were violated by the prosecutor's knowing use of false testimony by Ms. Lewis.  He also complains that the state court's denial, without an evidentiary hearing, of the motion to vacate the judgment in which he presented this claim, renders that court's factual determinations "unreasonable . . . in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); (Pet. at 51-52).

Habeas relief can be granted if newly discovered testimony demonstrates a due process violation based on perjured testimony. <u>See</u> <u>Drake v. Portuondo</u>, 321 F.3d 338, 344-45 (2d Cir. 2003).  The

---

[16] To the extent that Mr. John complains that the evidence was "incredible," "suspect," and "inconsistent" (Pet. at 37-39, 41), these arguments go to the weight, rather than the sufficiency, of the evidence.  Claims that the verdict was against the weight of the evidence derive exclusively from state law and are not cognizable on habeas review.  <u>See, e.g.</u>, <u>Tucker v. Phillips</u>, No. 04 Civ. 2964, 2008 WL 4128202, at *6 (S.D.N.Y. Sept. 2, 2008); <u>Douglas v. Portuondo</u>, 232 F. Supp. 2d 106, 116 (S.D.N.Y. 2002).

conviction cannot stand if (1) "'the prosecution knew, or should have known, of the perjury,' and (2) 'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'"  Id. at 345 (footnote omitted) (quoting United States v. Agurs, 427 U.S. 97, 103 (1976)).

Here, the judge who presided over Mr. John's trial denied the motion to vacate, finding:

> Defendant has not supplied this court with credible evidence of recantation.  The third-party source of the alleged recantation is not credible.  The circumstances of the alleged recantation, as described by the third-party source in her affidavit, are inherently implausible.  The alleged recanter has submitted a sworn affidavit in which she denied recanting her trial testimony.  The two prosecutors who worked on defendant's case denied "persuading" the witness to testify against defendant, an accusation that was contained in the alleged recantation.  Under these circumstances, this court finds no credible evidence to support a claim that Duvean Lewis recanted her trial testimony.

(Decision on 2nd Mot. to Vacate at 1-2).  Leave to appeal was denied.  Where, as here, the state court made findings of fact after permitting development of the record -- Mr. John was allowed to submit documentary evidence and argument, which were countered by the prosecutors -- these findings are entitled to deference unless they are clearly unreasonable.  See Lewis v. Dufrain, 392 F. Supp. 2d 498, 505 (W.D.N.Y. 2005) (according deference to state court's credibility determination where motion to vacate was based on affidavit of witness recanting testimony); Bracero v. Greiner, No.

00 Civ. 5512, 2004 WL 1846298, at *10 (S.D.N.Y. Aug. 17, 2004) (same); cf. Drake, 321 F.3d at 345 (declining to defer where motion was summarily denied without reasoning or opportunity to develop record). Here, the trial judge found that Ms. Love's account of the alleged recantation was not credible.  In light of the other evidence before him, that was not an unreasonable determination. Therefore, the petitioner must rebut the findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Channer v. Brooks, 320 F.3d 188, 195-96 (2d Cir. 2003).  He has not sustained this burden.  He relies, in large part, on the same evidence that the state court rejected.  The additional evidence presented, an affidavit by private investigator Jean Mignolet, whom the petitioner hired to research certain claims made in Ms. Duvean's response to Ms. Love's affidavit, does not sufficiently rebut the state court's findings.  The report attempts to establish that Ms. Lewis lived in Florida at the time that she allegedly admitted to Ms. Love that her testimony at Mr. John's trial was false.  (Affidavit of Jean Mignolet dated May 26, 2009, attached as Exh. D to Reply).  Insofar as the investigator's report undermines Ms. Lewis' assertion that she had not lived in Florida since 2004 (Affidavit of Duvean Lewis dated March 12, 2009, attached as Exh. B to Affidavit of Ann Prunty dated March 13, 2009, attached as Exh. Y to Ans., ¶ 1), it merely nibbles at the edges of Ms. Lewis' affidavit.  It does not address

51

Ms. Love's story, which the state court found "inherently implausible." (Decision on 2d Mot. to Vacate at 1). Especially given that a recantation must be "looked upon with the utmost suspicion," Sanders v. Sullivan, 863 F.2d 218, 225 (2d Cir. 1988) (internal quotation marks omitted), even when it comes from the actual trial witness rather than a third party, Ms. Mignolet's affidavit does not constitute clear and convincing evidence to rebut the trial court's finding that here was no recantation. Without the recantation, there is no evidence of perjury. In addition, the Mignolet affidavit does not support Mr. John's allegation that the prosecution knew or should have known of the alleged perjury, as is required to show a due process violation here.[17]   Therefore, the

---

[17]  In Ortega v. Duncan, 333 F.3d 102, 108 (2d Cir. 2003), the Second Circuit held that, in certain circumstances, the right to due process can be violated and habeas corpus relief granted even if the prosecution had no knowledge of the perjured testimony. This is not such a situation. In Ortega, the state court had never passed on the credibility of the recantation. Id. at 106. Thus, the court did not apply AEDPA's deferential standards. Id. at 108 n.4 (stating, "Because the state court never adjudicated the issue of Garner's perjury and the district court reached the erroneous conclusion that Garner did not perjure himself, we are in the position in this appeal to consider the impact of Garner's perjury for the first time," and citing United States v. Wallach, 935 F.2d 445, 456 (2d Cir. 1991)); Ortiz v. Woods, 463 F. Supp. 2d 380, 396 (W.D.N.Y. 2006) ("In Ortega, the Second Circuit apparently was not considering the petition under the more deferential AEDPA review standard."). Therefore, the Second Circuit did not have to defer to a state court's finding that the state court trial was fair. See Channer, 320 F.3d at 196. Moreover, the appellate court did not, apparently, think itself limited to reliance on "clearly established federal law, as determined by the Supreme Court." 28

state courts' denial of his motion to vacate was not constitutional error.

To the extent that the petitioner contends that the failure of the state court to hold an evidentiary hearing on his motion to vacate the judgment was itself a constitutional violation, the claim fails. "As no constitutional provision requires a state to grant post-conviction review, most federal courts have rejected due process claims arising out of the conduct of state post-conviction proceedings, holding that such claims are not cognizable on habeas review." Cruz v. Smith, No 05 Civ. 10703, 2010 WL 582348, at *29 (S.D.N.Y. Feb. 17, 2010) (citing Pennsylvania v. Finley, 481 U.S. 551, 557 (1987), and collecting district court cases) (footnote

U.S.C. § 2254(d)(1); Ortega, 333 F.3d at 108 & n.4 (citing Second Circuit direct appeals for its conclusion that due process can be violated when perjured testimony is presented to trial court without knowledge of prosecution). I, however, am so limited, and, as Ortega "has not been adopted by the Supreme Court," Dukes v. Superintendent, Green Haven Correctional Facility, No. 02 Civ. 9505, 2005 WL 1026534, at *2 (S.D.N.Y. May 3, 2005), it is not a basis for relief, cf. DiMattina v. United States, __ F. Supp. 2d __, __, 2013 WL 2632570, at *29 (E.D.N.Y. 2013) (suggesting Ortega is best understood as allowing freestanding innocence claim). Even if it had been, "[i]n circumstances where a petitioner alleges that a witness has recanted his or her testimony, a petitioner must demonstrate that the recantation was reliable and that the elimination of the perjured testimony would probably result in an acquittal or a retrial." White v. Rock, No. 10 CV 5163, 2013 WL 1767784, at *32 (E.D.N.Y. April 22, 2013) (internal quotation marks omitted). Because, as discussed above, Mr. John has not shown the recantation to be reliable, he cannot meet this standard.

omitted).  Even if it were a cognizable claim, it would fail for two reasons.  First, the failure to hold an evidentiary hearing did not render the proceedings fundamentally unfair when, as noted above, the petitioner had an opportunity to present documentary evidence and argument, which the court reviewed before rendering its opinion.  Cruz, 2010 WL 582348, at *30 (citing Finley, 481 U.S. at 556-57).  Second, any purported right to an evidentiary hearing is not rooted in clearly established federal law as determined by the Supreme Court.  Therefore, the Appellate Division's denial of leave to appeal the lower court's decision on the basis of its failure to hold an evidentiary hearing cannot be the basis for habeas relief.

Conclusion

For the reasons above, I recommend that Mr. John's petition for a writ of habeas corpus be denied.  Pursuant to 28 U.S.C. § 636 (b)(1) and Rules 72, 6(a), and 6(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Colleen McMahon, Room 1350, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.  Failure to file timely objections will preclude appellate review.

Respectfully Submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE


Dated: New York, New York
       August 26, 2013


Copy mailed this date to:

Garrick Gideon John
#537699
Taylor Correctional Institution
8515 Hampton Springs Rd. Rd.
Perry, FL 32348

Lisa E. Fleischmann, Esq.
Assistant Attorney General
120 Broadway
New York, New York 10271